**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|  |  |  |
|---|---|---|
| | : | |
| RACHITA HAWKINS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CNS CLEANING COMPANY and | : | |
| ZENTIS NORTH AMERICA, LLC | : | |
| | : | No. 21-5626 |
| Defendants. | : | |
| | : | |

---

**MEMORANDUM**

**PAMELA A. CARLOS**                                                    **April 4, 2023**
**U.S. MAGISTRATE JUDGE**

**I.      INTRODUCTION**

Rachita Hawkins has sued CNS Cleaning Company ("CNS") and Zentis North America, LLC ("Zentis") (collectively "Defendants") for racial discrimination and retaliation under Title VII[1] and the Pennsylvania Human Relations Act ("PHRA" or "Act").[2] Defendants now move for summary judgment. For the reasons explained below, summary judgment is granted.

**II.     FACTUAL HISTORY AND PROCEDURAL POSTURE**

Zentis is a food manufacturing company with a location in Philadelphia.[3] CNS is a company which subcontracts commercial janitorial cleaning services throughout Pennsylvania, New Jersey and Delaware.[4] Ms. Hawkins is an African American female, and the owner of Sponge'z Cleaning, LLC, a commercial cleaning subcontractor.[5]

On August 19, 2019, CNS subcontracted Ms. Hawkins to perform cleaning at assigned buildings.[6] On October 2, 2019, Zentis contracted with CNS for cleaning services and CNS assigned Ms. Hawkins to Zentis' Philadelphia facilities.[7] On or about December 2, 2020, after a

series of complaints from Zentis about poor quality cleaning, CNS terminated Ms. Hawkins from her assignment at Zentis.[8]

Ms. Hawkins claims her termination was the result of race-based discrimination in violation of Title VII and the PHRA.[9]  Moving for summary judgment, Defendants argue Ms. Hawkins is ineligible for relief under both statutes because only specific classes of independent contractors are protected by the PHRA and Title VII only protects employees, not independent contractors.[10]  In response, Ms. Hawkins concedes her status as an independent contractor and withdraws her Title VII claims.[11]  However, Ms. Hawkins requests I decline exercising supplemental jurisdiction over her PHRA claims and dismiss them without prejudice so she can raise them again in state court.[12]  But because her federal and state claims form part of the same case or controversy, the district court's exercise of supplemental jurisdiction is required.  For this reason, we will rule on Defendants' motions and grant summary judgment.

## III.    <u>JURISDICTION</u>

As she withdraws her federal claims, Ms. Hawkins requests the Court decline exercising supplemental jurisdiction over the two PHRA claims and dismiss them without prejudice so the remaining state law issues can be adjudicated by a state court.[13]

Ms. Hawkins supports her request by noting a district court's discretion to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction."[14]  But the district court's exercise of supplemental jurisdiction is required, not discretionary, when the claims over which the district court has original jurisdiction "form part of the same case or controversy" as other related claims.[15]

Ms. Hawkins federal and state claims form part of the same case or controversy because they arise from identical underlying facts and allegations.[16]  Federal antidiscrimination and PHRA

claims are commonly adjudicated concurrently for this reason.[17]  State law PHRA claims are also "to be interpreted as identical to federal antidiscrimination laws" so far as the PHRA does not require a particular provision to be interpreted differently.[18]  Accordingly, I must exercise supplemental jurisdiction over Ms. Hawkins' PHRA claims. However, even if the exercise of supplemental jurisdiction fell within the Court's discretion, for the reasons stated below, I conclude that Ms. Hawkins' PHRA claims are futile.

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only in cases where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19]  A genuine dispute exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those that "might affect the outcome of the suit under the governing law."[20]  At the summary judgment stage, the facts and evidence are viewed in "the light most favorable to the nonmoving party."[21]

The movant has the initial burden of showing an absence of a genuine dispute as to any material fact.[22]  This includes any argument that there is no evidence to support an essential element of the nonmoving party's case.[23]  After the movant has made this initial showing, the burden then shifts to the nonmoving party to demonstrate that there is sufficient evidence in the record that would support a jury verdict in their favor.[24]  Importantly, speculation and conclusory allegations by the nonmoving party are not enough to defeat a summary judgment motion.[25]

## V.    ANALYSIS

Defendants argue Ms. Hawkins' state claims fail because she is not a type of independent contractor under PHRA protection.[26]  Ms. Hawkins does not contest Defendants' position as to her

status as an independent contractor.[27]   Thus, for purposes of this analysis, I accept Ms. Hawkins as an independent contractor.

The PHRA provides it is an unlawful discriminatory practice,

> "[f]or any employer because of [the] race . . . of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."[28]

The Act protects two classes of independent contractors: (1) "any person who is subject to the provisions governing any of the professions and occupations regulated by State licensing laws enforced by the Bureau of Professional and Occupational Affairs in the Department of State, or [(2)] is included in the Fair Housing Act . . . ."[29]   "Only state-licensed professions and occupations are subject to regulations enforced by the Bureau of Professional and Occupational Affairs."[30] "The Fair Housing Act governs those who sell, rent or lease dwellings . . . or provide financing for residential real estate-related transactions."[31]   Independent contractors, other than as described, are not covered by the PHRA.[32]

Ms. Hawkins is an independent contractor engaged to perform commercial cleaning services.   Cleaning services are not one of the enumerated professions or occupations protected under the PHRA.   Ms. Hawkins fails to make a prima facie showing of PHRA racial discrimination, therefore her claims fail as a matter of law.

4

## VI.     <u>CONCLUSION</u>

Upon review of the record and arguments of all parties, I grant summary judgment of Ms. Hawkins' PHRA claims.

BY THE COURT:

_s/Pamela A. Carlos_____
PAMELA A. CARLOS
U.S. Magistrate Judge

---

[1] 42 U.S.C.A. § 2000e et seq.

[2] The Pennsylvania Human Relations Act; 43 Pa. Stat. Ann. §§ 951-963.

[3] ECF Doc. No. 33-6 at 62.

[4] ECF Doc. No. 33-5 at 13.

[5] ECF Doc. No. 33-4 at 12-13; 70.

[6] ECF Doc. No. 33-9.  The subcontractor agreement with CNS identifies and is signed by Rachita Hawkins only. Sponge'z Cleaning, LLC is mentioned only on the liability insurance certificates.  ECF Doc. No. 35-4.

[7] ECF Doc. Nos. 33-5 at 34-35; 33-9; 33-10.

[8] ECF Doc. No. 33-5 at 70.

[9] ECF Doc. No. 1.

[10] ECF Doc. Nos. 33-1 and 34-1; 42 U.S.C.A. § 2000e(f) ("The term 'employee' means an individual employed by an employer"); *see also Hill-Keys v. Colvin,* No. 13-2852, 2016 WL 7654653, at *3 (E.D. Pa. March 11, 2016) ("Title VII protects employees; it does protect independent contractors.") (citing *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013); *Kahn v. American Heritage Life Ins. Co*., 324 F. Supp. 2d 652, 655 (E.D. Pa. 2004)).

[11] *See* ECF Doc. Nos. 38, 39 ("[Ms. Hawkins] is not contesting Defendant[s'] position with respect to [her] status as an independent contractor.  It is clear from the record following discovery that [Ms. Hawkins] did not have an employer-employee relationship with" CNS nor Zentis).

[12] ECF Doc. Nos. 38, 39.

[13] ECF Doc. Nos. 38, 39.

[14] *See* ECF Doc. Nos. 38, 39 (citing 28 U.S.C.A. § 1367(c)(3)).

[15] 28 U.S.C.A. § 1367(a); *see Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1285 n.14 (3d Cir. 1993) ("The language in § 1367 expressly . . . states that federal courts *shall* exercise supplemental jurisdiction over pendent claims arising out of the same case or controversy and *may* decline to exercise jurisdiction if all federal claims are dismissed.") (emphasis in original).

[16] ECF Doc. No. 1.

[17] *See Henderson v. Philadelphia Housing Authority*, No. 22-129, 2023 WL 114693, at *7-9, *13-14 (E.D. Pa. January 5, 2023) (The district court exercised supplemental jurisdiction over mirror Title VII and PHRA discrimination claims as identical facts supported both the federal and state claims.  But the court declined to exercise supplemental jurisdiction over unrelated state law claims such as defamation, breach of contract and wrongful termination); *Petrunich v. Sun Building Systems, Inc.*, No. 04-2234, 2006 WL 2788208 (M.D. Pa. September 26, 2006) (plaintiff claimed age discrimination under the ADEA and PHRA.  The district court granted summary judgment on both); *Levy v. Trent Motel Associates, LP*, No. 11-776, 2011 WL 3803647 (E.D. Pa. August 26, 2011) (granting in part and denying in part summary judgment against a various civil rights and PHRA retaliation claims).

[18] *See Jones v. SEPTA*, 796 F.3d 323, 327 (3d Cir. 2015) (quoting *Fogleman v. Mercy Hosp., Inc*., 283 F.3d 561, 567 (3d Cir. 2002)).

[19] Fed. R. Civ. P. 56(a).

[20] *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[21] *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[22] *See Anderson*, 477 U.S. at 256.

[23] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[24] *See id.*

[25] *Razak*, 951 F.3d at 144.

[26] ECF Doc. No. 33-1 at 9-10; ECF Doc. No. 34-1 at 12-15.

[27] *See* ECF Doc. Nos. 38, 39.

[28] 43 Pa. Stat. Ann. § 955(a); *see Velocity Express v. Pennsylvania Human Relations Commission*, 853 A.2d 1182, 1184 n.2 (Pa. Commw. Ct. 2004).

[29] 43 Pa. Stat. Ann. § 954(x); *see Velocity Express*, 853 A.2d at 1185 n.2.

[30] *Velocity Express*, 853 A.2d at 1186; (The Bureau of Professional and Occupational Affairs regulates the following professions and occupations: accountancy (63 P.S., ch. 1); architects (63 P.S., ch. 2A); podiatry (63 P.S., ch. 3); dentistry (63 P.S., ch. 4); engineering, land surveyor and geologist (63 P.S., ch. 5); nursing (63 P.S., ch. 7); optometry (63 P.S., ch. 8); naturopathic doctors (63 P.S., ch. 9A); pawnbrokers (63 P.S., ch. 10); pharmacy (63 P.S., ch. 11); wholesale prescription drug distributors (63 P.S., ch. 11A); interstate medical providers (63 P.S., ch. 11B); real estate professionals (63 P.S., ch. 13A); mortgage banking (63 P.S., ch. 13B); real estate appraisers (63 P.S., ch. 13C); real estate assessors (63 P.S., ch. 13D); funeral directors (63 P.S., ch. 14); veterinary medicine (63 P.S., ch.15); beauty culture (63 P.S., ch. 16); barbers (63 P.S., ch. 17); chiropractic medicine (63 P.S., ch. 18A); massage therapy (63 P.S.,

ch. 18C); poultry technician (63 P.S., ch. 19); practical nursing (63 P.S., ch. 20); auctioneers (63 P.S., ch. 21A); motor vehicle and mobile home sales (63 P.S., ch. 22A); motor vehicle physical damage appraisers (63 P.S., ch. 22B); landscape architects (63 P.S., ch. 23); water and wastewater systems operator (63 P.S., ch. 24); nursing home administrators (63 P.S., ch. 25); psychology (63 P.S., ch. 26); physical therapy (63 P.S., ch. 27); insurance adjusters (63 P.S., ch. 30); speech-language pathologists and audiologists (63 P.S., ch. 31); sign language interpreter and transliterator (63 P.S., ch. 31A); acupuncture (63 P.S., ch. 32); social workers, marriage and family therapists and professional counseling (63 P.S., ch. 33); radon testing (63 P.S., ch. 34); asbestos occupations (63 P.S., ch. 35); check casher (63 P.S., ch. 37); crane operator (63 P.S., ch. 38); debt management services (63 P.S., ch. 39); debt settlement services (63 P.S., ch. 40)).

[31] *See Velocity Express*, 853 A.2d at 1186 n.8 (citing 42 U.S.C. §§ 3604-3065).

[32] *Velocity Express*, 853 A.2d at 1186 (Holding "the PHRC Motions Commissioner erred in concluding that independent contractors "other than" those specifically enumerated in section [95]4(x) are covered by the PHRA."); *see Brown v. J. Kaz, Inc.*, 581 F.3d 175, 180 n.1 (3d Cir. 2009) (Counseling "the PHRA only applies to 'independent contractors who are in professions or occupations regulated by the [Pennsylvania] Bureau of Professional and Occupational Affairs or those who are included in the Fair Housing Act.'"); *Vasinda v. State Farm Mutual Automobile Insurance Company*, No. 20-224, 2022 WL 17669120, at *3 (M.D. Pa. December 14, 2022) (Finding "an insurance agent regulated by the Pennsylvania Department of Insurance [instead of the Bureau of Professional and Occupational Affairs in the Department of State] her claim 'simply did not fall within the PHRA's purview as defined by the statute.'").